UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT DENNIS HEATON, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-405** |
| **NEWELL NORMAND** | **SECTION: "E"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Robert Dennis Heaton, Jr., was a state pretrial detainee at the time he filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. In this lawsuit, he challenged various conditions of his confinement in the Jefferson Parish Correctional Center, and he named Jefferson Parish Sheriff Newell Normand as the sole defendant.[1]

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on May 23, 2017. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

Based on plaintiff's complaint and Spears hearing testimony, the Court finds that he is making the following allegations in this lawsuit:

---

[1] Plaintiff has since been convicted and is currently incarcerated at the Dixon Correctional Institute in Jackson, Louisiana.

Plaintiff claims that the Jefferson Parish Correctional Center was unsanitary, with mold and excessive amounts of dust in the living areas, and had an "excessive amount of roaches, mice and fruit flies."[2]  He alleges that those conditions caused him a variety of physical ailments, such as headaches, sinus problems, nausea, weight loss, and weakness.  Once he was transferred from the jail, those ailments disappeared.

He also claims that the jail's law library and legal services program were inadequate. Although legal services were available at the jail, he experienced delays in receiving those services. Further, even when he was able to obtain assistance, he was not given the direct access to law books and caselaw he desired.  He states that he needed such access in order to adequately represent himself in his state criminal proceedings, because he had fired the public defender appointed to represent him.

He also claims that jail officials tampered with his legal mail.  Specifically, on one occasion, he had written to this Court requesting fourteen sets of forms to file lawsuits.  When he received the response from the Clerk of Court, the envelope had already been opened -- purportedly by mistake, although he doubts that excuse.  Moreover, although the envelope contained the fourteen complaint forms he requested, no pauper applications were in the envelope.  He suspects that the pauper applications were removed by prison staff in order to hinder his litigation efforts, although he has no evidence to prove that suspicion.  He also alleges that his outgoing legal mail was delayed on occasions for invalid reasons; again, he suspects this was an attempt to thwart his efforts to seek relief from this Court.

---

[2] Rec. Doc. 7, p. 5.

Lastly, plaintiff claims that he filed various administrative grievances at the jail; however, those grievances were either ignored or, if answered, failed to produce satisfactory results.

When asked at the Spears hearing why he named Newell Normand as a defendant, plaintiff explained that, because Normand is the sheriff, "everything falls back on him." Plaintiff conceded that, to his knowledge, Normand was not personally involved in the foregoing actions and inactions which allegedly violated plaintiff's rights.

### I. Screening Standards

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[3] Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …

---

[3] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

>   (i)   is frivolous or malicious;
>   (ii)  fails to state a claim on which relief may be granted; or
>   (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II. Plaintiff's Claims

Plaintiff is asserting various federal civil rights claims pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

However, for the following reasons, even if plaintiff's § 1983 complaint is broadly construed,[4] it should be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

As an initial matter, the Court notes that the only defendant plaintiff has named in this lawsuit is Jefferson Parish Sheriff Newell Normand. Plaintiff does not indicate whether he is suing Normand in his official capacity, his individual capacity, or both. However, plaintiff's allegations are insufficient to state a claim against Normand in either capacity.

If Normand is being sued in his official capacity, it is clear that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, any official-capacity claim against Normand would in reality be a claim against the local governmental body itself. Maize v. Correct Health Jefferson, L.L.C., Civ. Action No. 13-5925, 2013 WL 6490549, at *2 (E.D. La. Dec. 10, 2013); see also Picard v. Gusman, Civ. Action No. 12-1966,

---

[4] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012), adopted, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010).  However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, *a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.*  To satisfy the cause in fact requirement, *a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.*  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted; emphasis added).  Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."  Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights.  See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3.  In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom.  Accordingly, he has failed to state a proper official-capacity claim against Normand.

On the other hand, if Normand is being sued in his individual capacity, "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). As noted, plaintiff testified at the Spears hearing that he has no knowledge that Normand was *personally involved* in the purported constitutional violations in this case. Further, although Normand holds a supervisory position over the jail staff, that fact is not alone a sufficient basis to hold him liable under § 1983. Even if someone under Normand's supervision violated plaintiff's rights, it is well established that a supervisory official may not be held liable pursuant to § 1983 under any theory of vicarious liability for federal civil rights violations allegedly committed by his subordinates. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

For these reasons, plaintiff has failed to state a proper claim against Sheriff Normand. Further, out of an abundance of caution, the undersigned notes that even if plaintiff had named a proper defendant or were allowed an opportunity to amend his complaint to attempt to name one, his underlying claims would still fail for the following reasons.

### A. Unconstitutional Physical Conditions

Plaintiff's first claim is that he was subjected to unconstitutional physical conditions of confinement. As noted, he was a pretrial detainee at the time he filed this lawsuit. It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015). For the following reasons, it is apparent that the physical conditions at the jail alleged by plaintiff, while unpleasant, concern nothing more than *de minimis* inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

Clearly, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). However, while a jail should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d

211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."). Plaintiff's allegations, even if accepted as true, fail to cross the impermissible line between uncomfortable and unconstitutional.

For example, although plaintiff complains that there was mold in the jail, the jurisprudence has repeatedly held that the mere fact that mold is present in a jail does not render an inmate's confinement unconstitutional. See, e.g., Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Similarly, the presence of dust does not render an inmate's confinement unconstitutional. Jeanpierre v. Custodian, Civ. Action No. 10-4393, 2011 WL 1315113, at *3 (E.D. La. Jan. 10, 2011), adopted, 2011 WL 976507 (E.D. La. Mar. 18, 2011); Cummings v. Gusman, Civil Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009); see also LeBlanc v. Gusman,

Civ. Action No. 09-2786, 2010 WL 148290, at *3 (E.D. La. Jan. 12, 2010); McAllister v. Strain, No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009).

Likewise, the mere presence of insects and other types of vermin does not amount to a constitutional violation. See, e.g., Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015) (spiders); McKinney v. Gusman, Civ. Action No. 14-2988, 2015 WL 2341719, at *3 (E.D. La. May 13, 2015) ("vermin"); Harrison v. Cox, Civ. Action No. 12-cv-1813, 2013 WL 620799, at *5 (W.D. La. Jan. 16, 2013) (gnats and "other insects"), adopted, 2013 WL 622399 (W.D. La. Feb. 15, 2013); Clark v. Gusman, Civ. Action No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012) (mice and leeches), adopted, 2012 WL 1825302 (E.D. La. May 18, 2012); Murray v. Edwards County Sheriff's Department, 453 F. Supp. 2d 1280, 1292 (D. Kan. 2006) ("insects"), aff'd, 248 Fed. App'x 993 (10th Cir. 2007); Smith v. Barber, 316 F. Supp. 2d 992, 1028-29 (D. Kan. 2004) (gnats).

Accordingly, for all of these reasons, plaintiff's allegations concerning the physical conditions at the jail, even if true, fail to state a cognizable, nonfrivolous claim.

### B.  Inadequate Access to a Law Library

Plaintiff's claim that the law library and legal services program at the jail were inadequate to allow him to represent himself in his state criminal proceedings fares no better. It is clear that inmates have a constitutional right of meaningful access to the courts which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). The right extends to pretrial detainees. See United States v. Moya-Gomez, 860 F.2d 706, 743 (7th Cir. 1988); Wetzel v. Strain, Civ. Action No. 09-

7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010); Kirkpatrick v. Daugherty, Civil Action No. 6:05cv461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006).

However, as noted, plaintiff was appointed a public defender to represent him in his state criminal proceedings. That appointment fully satisfied his right of access to courts; in light of the appointment, no independent access to a law library or effective jail legal services program was constitutionally required. See, e.g., Dickinson v. TX, Fort Bend County, 325 Fed. App'x 389, 390 (5th Cir. 2009) ("Because Dickinson had court-appointed counsel to represent him, he did not have a constitutional right of access to a law library to prepare his criminal defense."); Ashcraft v. Cameron County, No. 97-41219, 1998 WL 611201, at *3 (5th Cir. Aug. 17, 1998) ("A criminal defendant cannot complain that he was denied access to the courts while represented by counsel."); Ford v. Foti, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him."); Childs v. Scott, No. 94-60723, 1995 WL 153057 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); Webb v. Havins, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); Crockett v. Carpenter, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994).

Importantly, the Court notes that the foregoing rule is not altered by the fact that plaintiff ultimately chose to fire his public defender and represent himself. It is clear that if a criminal defendant subsequently discharges his public defender, he is not entitled to access to a law library even if he elects to proceed *pro se*. Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) ("[H]aving rejected the assistance of court appointed counsel, [an inmate has] no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial."); see also Sosa v. Strain, Civil

Action No. 06-9040, 2007 WL 1521441, at *6 n.8 (E.D. La. May 22, 2007); <u>Buckenburger v. Strain</u>, Civil Action No. 06-5670, 2006 WL 4503353, at *3 (E.D. La. Oct. 20, 2006).

For all of these reasons, this claim is frivolous.

### **C. Mail Tampering**

Plaintiff's claim concerning the alleged mail tampering also fails. Even if plaintiff's mail was opened outside of his presence as he alleges, that fact alone would not rise to the level of a constitutional violation. The United States Fifth Circuit Court of Appeals has expressly held that an inmate's constitutional rights are not violated by the mere fact that his legal mail is opened outside of his presence and without his consent. <u>Brewer v. Wilkinson</u>, 3 F.3d 816, 825 (5th Cir. 1999); <u>see also</u> <u>Davis v. Baker</u>, 251 Fed. App'x 899 (5th Cir. 2007); <u>Sanders v. Carnley</u>, 100 Fed. App'x 236, 237 (5th Cir. 2004); <u>Jones v. Mail Room Staff</u>, 74 Fed. App'x 418, 419 (5th Cir. 2003). This is true even if the jail has a policy that such mail is to be opened only in the inmate's presence, because "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." <u>Samford v. Dretke</u>, 562 F.3d 674, 681 (5th Cir. 2009).

Further, although plaintiff suspects that someone removed fourteen pauper applications from the envelope mailed to him by this Court, he has no evidence that occurred, and that is not the only possible explanation for the missing pauper applications. For example, the court clerk who responded to plaintiff's request could simply have inadvertently failed to include the pauper applications along with the complaint forms. Where, as here, a plaintiff's mail tampering claim is based on pure speculation unsupported by any evidence, the claim fails. See, e.g., <u>Hebrard v. La. State Dept. of Corrections</u>, Civ. Action No. 15-6268, 2016 WL 1441656, at *4 (E.D. La. Jan. 8, 2016), <u>adopted</u>, 2016 WL 1446151 (E.D. La. Apr. 11, 2016); <u>Jones v. Ford</u>, Civ. Action No.

2:08cv176, 2009 WL 2032398, at *4 (S.D. Miss. July 9, 2009); Crocker v. Sweetin, Civ. Action No. 9:08cv233, 2009 WL 903278, at *4-5 (E.D. Tex. Mar. 31, 2009). Simply put, plaintiff's factual allegations in this case do not, as required, "raise a right to relief above the speculative level." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2007); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (a plaintiff's allegations are insufficient to state a claim when they are based on nothing more than "a sheer possibility that a defendant has acted unlawfully").

Moreover, plaintiff's contention that the alleged mail tampering resulted in him being unable to seek relief from this Court is inaccurate. If a plaintiff mails a complaint to the Clerk of Court unaccompanied by either a filing fee or a pauper application, the complaint is still accepted for filing and the case is opened. The Clerk of Court simply issues a Notice of Deficient Filing informing the plaintiff that he must either pay the filing fee or apply for pauper status before his case can proceed. Therefore, plaintiff's contention that he was unable to file a complaint without a pauper application is false. Further, although plaintiff similarly alleges that his outgoing mail was improperly delayed, those delays, if any, likewise did not ultimately render him unable to seek relief. In light of these facts, plaintiff's position as a litigant was not prejudiced by the alleged mail tampering. Accordingly, the tampering, even if it occurred, did not rise to the level of a constitutional violation. Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).

### D.  Inadequate Grievance Procedure

Lastly, plaintiff claims that his administrative grievances were either ignored or went unresolved. However, again, even if that is true, it is not a constitutional violation – inmates do not have a constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. Bonneville v. Basse, 536 Fed. App'x

502, 503 (5th Cir. 2013); Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).  Therefore, this claim is frivolous.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-second day of June, 2017.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**